# 17-2718-cv

# United States Court of Appeals

*for the*

# Second Circuit

VALENTIN TAPIA, ROMULO RICANO BALDERAS, EUFEMIA CASTILLO,
individually and on behalf of others similarly situated,

*Plaintiffs-Appellants,*

– v. –

BLCH 3RD AVE LLC, DBA Brick Lane Curry House,
AJIT BAINS, SATINDER SHARMA,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFFS-APPELLANTS

SHAWN RAYMOND CLARK
MICHAEL FAILLACE & ASSOCIATES, P.C.
*Attorneys for Plaintiffs-Appellants*
60 East 42nd Street, Suite 4510
New York, New York 10165
(212) 317-1200

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. ii

JURISDICTIONAL STATEMENT ......................................................1

ISSUE PRESENTED ...........................................................................1

STATEMENT OF THE CASE AND RELEVANT FACTS .................2

SUMMARY OF ARGUMENT .............................................................3

ARGUMENT .......................................................................................5

     I.     THE DISTRICT COURT ERRED BY CONCLUDING
          THAT SATINDER SHARMA COULD NOT CONSTITUTE
          AN "EMPLOYER" UNDER THE FLSA AND NYLL ......................5

          A.     THE STANDARD OF REVIEW ...............................................5

          B.     THE STANDARD FOR DETERMINING WHETHER
                AN INDIVIDUAL IS AN EMPLOYER ...................................6

          C.     THE DISTRICT COURT'S MECHANICAL
                APPLICATION OF THE CARTER FACTORS
                CONSTITUTES REVERSIBLE ERROR ...............................11

     II.     THE DISTRICT COURT ERRED IN DECLINING TO
          AWARD LIQUIDATED DAMAGES UNDER BOTH THE
          FLSA AND NYLL ...................................................................16

CONCLUSION ..................................................................................26

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*AHW Inv. P'ship v. Citigroup Inc.*,
 806 F.3d 695 (2d Cir. 2015) ........................................................................25

*Antenor v. D & S Farms*,
 88 F.3d 925 (11th Cir. 1996) ..........................................................................5

*Asfaw v. BBQ Chicken Don Alex No. 1 Corp.*,
 Index No. 14-cv-5665 (CBA), 2016 U.S. Dist. LEXIS 42298
 (E.D.N.Y. Mar. 30, 2016)..............................................................................22

*Barfield v. New York City Health & Hosps. Corp.*,
 537 F.3d 132 (2d Cir. 2008) ...............................................................5, 9, 10

*Begum v. Ariba Disc., Inc.*,
 No. 12-cv-6620 (DLC), 2015 U.S. Dist. LEXIS 5598, 2015 WL
 223780 (S.D.N.Y. Jan. 16, 2015) ............................................................17, 18

*Carter v. Dutchess Community College*,
 735 F.2d 8 (2d Cir. 1984) ......................................................................*passim*

*Castillo v. RV Transp., Inc.*,
 15-cv-0527 (LGS) (JCF), 2015 U.S. Dist. LEXIS 170996 (S.D.N.Y.
 Dec. 21, 2015), *report and recommendation adopted in part,
 rejected in part*, 2016 U.S. Dist. LEXIS 48503 ...........................................21

*Chowdhury v. Hamza Express Food Corp.*,
 666 Fed. Appx. 59 (2d Cir. Dec. 7, 2016)..............................................*passim*

*Curtis & Gartside Co. v. Pigg*,
 134 P. 1125 (Okla. 1913)..................................................................................8

*Dole v. Elliott Travel & Tours, Inc.*,
 942 F.2d 962 (6th Cir. 1991) ...........................................................................6

*Donovan v. Agnew*,
 712 F.2d 1509 (1st Cir. 1983).........................................................................4

*Hart v. Rick's Cabaret Int'l, Inc.*,
 967 F. Supp. 2d 901 (S.D.N.Y. 2013) ..........................................................11

*Herman v. RSR Security Services*,
　　172 F.3d 132 (2d Cir. 1999) ................................................................*passim*

*Hernandez v. JRPAC, Inc.*,
　　Index No. 14-cv-4176 (PAE), 2016 U.S. Dist. LEXIS 75430
　　(S.D.N.Y. June 9, 2016) .........................................................................21, 22

*Ho v. Sim Enters.*,
　　2014 U.S. Dist. LEXIS 66408 (S.D.N.Y. May 14, 2014) ............................11

*Hoefer v. Bd. of Educ. of the Enlarged City Sch. Dist. of Middletown*,
　　820 F.3d 58 (2d Cir. 2016) ...........................................................................16

*Irizarry v. Catsimatidis*,
　　722 F.3d 99 (2d Cir. 2013) .................................................................*passim*

*Manning v. Boston Med. Ctr. Corp.*,
　　725 F.3d 34 (1st Cir. 2013)............................................................................14

*Mashud Parves Rana v. Monirul Islam*,
　　210 F. Supp. 3d 508 (S.D.N.Y. 2016) ..........................................................17

*Matter of Knight-Ridder Broad., Inc. v. Greenberg*,
　　511 N.E.2d 1116 (N.Y. 1987) .......................................................................25

*Nationwide Mut. Ins. Co. v. Darden*,
　　503 U.S. 318 (1992).........................................................................................8

*Rodriguez v. Globe Inst. of Tech.*,
　　15-cv-1435 (RA) (SN), 2016 U.S. Dist. LEXIS 106573 (S.D.N.Y.
　　August 10, 2016), *report and recommendation adopted*, 2016 U.S.
　　Dist. LEXIS 137656 (S.D.N.Y., Oct. 4, 2016)....................................... 17-18

*Rodriguez v. Obam Mgmt.*,
　　13-cv-00463 (PGG) (DF), 2016 U.S. Dist. LEXIS 155315
　　(S.D.N.Y. Nov. 7, 2016)................................................................................19

*Rutherford Food Corp. v. McComb*,
　　331 U.S. 722 ...........................................................................................5, 7, 8

*Santana v. Latino Express Rests., Inc.*,
　　198 F. Supp. 3d 285 (S.D.N.Y. 2016) ..........................................................18

*Santillan v. Henao*,
　　822 F. Supp. 2d 284 (E.D.N.Y. 2011).........................................................22

*Schmidt v. Falls Dodge, Inc.*,
    19 N.Y. 3d 178 (2012) ................................................................................24

*Tackie v. Keff Enters. LLC*,
    No. 14cv2074 (JPO), 2014 U.S. Dist. LEXIS 130148,
    2014 WL 4626229 (S.D.N.Y. Sept. 16, 2014) ......................................17, 18

*Tony & Susan Alamo Found v. Sec'y of Labor*,
    471 U.S. 290 (1985) ......................................................................................6

*Torres v. Gristede's Operating Corp.*,
    No. 04 Civ. 3316 (PAC), 2011 WL 4571792
    (S.D.N.Y. Sept. 23, 2011) ..............................................................................8

*U.S. Dep't of Labor v. Lauritzen*,
    835 F.2d 1529 (7th Cir. 1987) .......................................................................7

*United States v. Rosenwasser*,
    323 U.S. 360 (1945) ...................................................................................3, 7

*Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*,
    14-CV-10234 (JGK) (JLC), 2016 U.S. Dist. LEXIS 121259, 2016
    WL 4704917 (S.D.N.Y. Sept. 8, 2016), *report and recommendation
    adopted*, 2016 U.S. Dist. LEXIS 161123, 2016 WL 6879258
    (Nov. 21, 2016) ...........................................................................................19

*Zheng v. Liberty Apparel Co.*,
    355 F.3d 61 (2d Cir. 2003) ...................................................................*passim*

## Statutes & Other Authorities:

28 U.S.C. § 1291 ...............................................................................................1

28 U.S.C. § 1331 ...............................................................................................1

28 U.S.C. § 1332 ...............................................................................................1

28 U.S.C. § 1337 ...............................................................................................1

28 U.S.C. § 1367 ...............................................................................................1

29 U.S.C. § 201 .................................................................................................1

29 U.S.C. § 203(d) .....................................................................................3, 6, 7

29 U.S.C. § 203(e) .............................................................................................7

29 U.S.C. § 203(g) ...........................................................................................3, 7

29 U.S.C. § 216(b) .........................................................................................16, 17

81 Cong. Rec. 7657 (1937) ...................................................................................7

Bruce Goldstein, Marc Linder,  Laurence E. Norton II & Catherine
    Ruckelshaus, *Enforcing Fair Labor Standards in the Modern*
    *American Sweatshop: Rediscovering the Statutory Definition of*
    *Employment*, 46 UCLA L. Rev. 983 (April 1999) ..........................................7

Local Rule 32.1.1(a) ...........................................................................................16

N.Y. Bill Jacket 2009, ch. 372 ............................................................................23

N.Y. Bill Jacket 2010, ch. 594 .................................................................17, 23, 24

NYLL § 198(1-a) ...................................................................................16, 17, 21

NYLL § 663(1) ....................................................................................................16

NYLL Article 6, § 190 ...........................................................................................1

NYLL Article 19, § 650 ..........................................................................................1

Restatement of Agency § 220(1) (1933).................................................................12

## Jurisdictional Statement

The district court had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337 over the federal claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"). The district court had supplemental jurisdiction over Plaintiff-Appellants' ("Plaintiffs") state law claims under the New York Labor Law Article 6, §§ 190 et seq. and Article 19, §§ 650 et seq. ("NYLL") under 28 U.S.C. §§ 1332 and 1367.

This Court has jurisdiction under 28 U.S.C. §1291 because the appeal is from the final judgment entered by the district court on August 25, 2017. The district court's Memorandum & Order dated September 1, 2016 declined to award damages as against Defendant Satinder Sharma and declined to award double liquidated damages to Plaintiffs. Judgment was entered on August 25, 2017. Plaintiffs timely filed a notice of appeal on August 29, 2017.

## Issue Presented

Issue One: Whether the district court erred in finding that Defendant Satinder Sharma could not constitute an "employer" of any of the Plaintiffs under the FLSA and NYLL.

Issue Two: Whether the district court erred by declining to assess double liquidated damages against Defendants under both the FLSA and NYLL.

## **Statement of the Case and Relevant Facts**

This appeal arises out of a civil action brought by three individual employees against a restaurant operating under the name "Brick Lane Curry House" and two individual Defendants – Satinder Sharma and Ajit Bains.[1]  The civil action involved claims against Defendants alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").

The district court held a bench trial on April 18, 2016. (A-104) At trial, Plaintiffs Valentin Tapia ("Plaintiff Tapia"), Eufemia Castillo ("Plaintiff Castillo"), and Romulo Ricano Balderas ("Plaintiff Balderas") all testified concerning their employment at Brick Lane Curry House and their observations of Satinder Sharma's role at the restaurant.[2] (A-91-103)

By Memorandum and Order dated September 1, 2016, the district court issued an Opinion finding that Blch 3rd Ave. LLC., the corporate entity underlying the Brick Lane Curry House restaurant, committed multiple FLSA and NYLL violations. (A-104). The Court also concluded that Satinder Sharma was not an FLSA or NYLL employer of Plaintiffs despite being fifty percent owner of the restaurant. (A-104, 117-119). In so concluding, the Court found that Satinder Sharma was involved in

---

[1] Plaintiffs do not appeal the district court's findings concerning Defendant Ajit Bains.

[2] Pursuant to the district court's direction, witnesses' direct testimony at trial was by affidavit.

the general management of the restaurant, came to the restaurant daily, gave instructions to the restaurant's managers, supervised the staff in cleaning and organizing the restaurant, and reviewed the restaurant's payroll records each week. (A-108). Nevertheless, the Court concluded Satinder Sharma was not an employer because there was no evidence that he directly hired or fired any employees, controlled work schedules, or directly set compensation. (A-117-119).

The district court also determined that Plaintiffs were entitled to only one set of liquidated damages for their FLSA and NYLL wage claims. (A-116). The district court based this on the idea that there is no plausible distinction between the two forms of liquidated damages after April 9, 2011.

Following review of attorneys' fee issues, the district court entered a final judgment on August 25, 2017. (A-120-121). Plaintiffs filed a notice of appeal on August 29, 2017. (A-122).

## Summary of Argument

The Fair Labor Standards Act (FLSA) includes the "broadest definition" of the employment relationship "that has ever been included in any one act." *United States v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945). It defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee," and "employ" as "to suffer or permit to work." 29 U.S.C. § 203(d), (g). Based on this language, "[t]he overwhelming weight of authority"

3

holds that "a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983) (emphasis added). As this Court explained in *Herman v. RSR Security Services*, 172 F.3d 132, 139 (2d Cir. 1999), "employer" encompasses officers with the "power to control" the company's employees. In applying that test, courts are not restricted "to a narrow legalistic definition" of employment. Id. Rather, the test requires examination of the "economic reality" of the case "based upon all the circumstances."

The district court's decision below failed to apply this broad understanding and allows Defendant Satinder Sharma to do exactly what the FLSA was designed to prevent-evade responsibility for FLSA violations by delegation to third parties. It is clear by the undisputed facts here that Defendant Satinder Sharma had operational control over the restaurant at issue in this case. It was undisputed that he owned fifty percent of the restaurant, went to the restaurant daily, was involved in the general management of the restaurant, gave instructions to the restaurant's managers, supervised the staff, and reviewed the restaurant's payroll weekly. The district court's mechanical, narrow application of this Court's decision in *Carter v. Dutchess Community College*, 735 F.2d 8 (2d Cir. 1984) should not be permitted to allow

Defendant Sharma to escape liability from wage violations he consented to and profited from.

The Court should similarly reverse the district court's findings concerning liquidated damages under the FLSA and NYLL. The text and legislative history of liquidated damages under the two Acts supports the conclusion that the two forms of liquidated damages serve different purposes and may be awarded in tandem.

## <u>Argument</u>

### I.   THE DISTRICT COURT ERRED BY CONCLUDING THAT SATINDER SHARMA COULD NOT CONSTITUTE AN "EMPLOYER" UNDER THE FLSA AND NYLL

A. <u>The Standard of Review</u>

The "ultimate decision as to whether a party is an employer" under the FLSA "is a legal conclusion that is reviewed de novo." *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 76 (2d Cir. 2003).; *see Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (holding as a matter of law that purported independent contractors were employees under the FLSA); *see also Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 143-44 (2d Cir. 2008) (acknowledging "fact-intensive character of a determination of joint employment," but holding that summary judgment for plaintiffs is appropriate where the defendant's status as an employer "is established as a matter of law"); *Antenor v. D & S Farms*, 88 F.3d 925, 937-38 (11th Cir. 1996) (growers are employers as a matter of law even though middleman

rather than growers exercised some employer prerogatives). In particular, a finding that an individual is an employer is appropriate when the undisputed facts establish that an individual defendant has an ownership interest in the company and "operational control of significant aspects of the corporation's day to day functions." *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 966 (6th Cir. 1991) (emphasis removed) (internal quotation marks omitted). The question of whether liquidated damages may be awarded under both the FLSA and NYLL is likewise a conclusion of law that must be reviewed *de novo*.

### B. <u>The Standard for Determining Whether an Individual is an Employer</u>

Under the FLSA, employer is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. §203(d). "The Supreme Court has recognized that `broad coverage [under the FLSA] is essential to accomplish the [statute's] goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency." *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 (2d Cir. 2013) (citing *Tony & Susan Alamo Found v. Sec'y of Labor*, 471 U.S. 290, 296 (1985)). Accordingly, the Supreme Court has "consistently construed the Act liberally to apply to the furthest reaches consistent with congressional direction." *Id.*. The determination of whether an employer-employee relationship exists under FLSA is based on an "economic reality" test taking account of the totality of the circumstances. *Id.* at 104.

Under the FLSA, to "employ" is to "suffer or permit" an individual to work. 29 U.S.C. § 203(g).  An "employee" is "any individual employed by an employer." 29 U.S.C. § 203(e).  "'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."  29 U.S.C. § 203(d). The FLSA definition is "'the broadest definition [of 'employ'] that has ever been included in any one act.'" *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 69 (2d Cir. 2003) (quoting *United States v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945) (quoting 81 Cong. Rec. 7657 (1937) (statement of Sen. Hugo L. Black))).  It "sweeps in almost any work done on the employer's premises, potentially any work done for the employer's benefit or with the employer's acquiescence." *U.S. Dep't of Labor v. Lauritzen*, 835 F.2d 1529, 1543 (7th Cir. 1987) (Easterbrook, C.J., concurring).

By defining "employ" to include "to suffer or permit to work," Congress drew from child labor laws  that held businesses using middlemen that illegally hired and supervised children liable for  violations of these statutes, even where traditional agency control factors were not present. *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, n.7 (1947);  *Bruce Goldstein, Marc Linder,  Laurence E. Norton II & Catherine Ruckelshaus, Enforcing Fair Labor Standards in the Modern American Sweatshop: Rediscovering the Statutory Definition of Employment*, 46 UCLA L. Rev. 983 (April 1999) (discussing this history, and noting that under these child labor statutes, "if a person was in a position to prevent the employment of the child

on his business premises, in his business, or in the performance of the specific task that was prohibited, he was held accountable for having permitted or suffered any work performed"). The definition was intended to "stretch the meaning of 'employee'" to include work relationships that were not within the traditional common-law definitions. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947)). The actual words "mean[] that [the employer] shall not . . . permit by acquiescence, nor suffer by a failure to hinder." *Curtis & Gartside Co. v. Pigg*, 134 P. 1125, 1126 (Okla. 1913) (emphasis in original) (interpreting earlier child labor laws and finding employer liable although he had not spoken to or given instructions to child laborer directly). Thus, under the language of the FLSA, not acting on available information leads to liability if one had the power to stop work and did not do so. *See Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316 (PAC), 2011 WL 4571792, at *2 (S.D.N.Y. Sept. 23, 2011).

As the Second Circuit has stated: "[T]he broad language of the FLSA, as interpreted by the Supreme Court in *Rutherford*, demands that a district court look beyond an entity's formal right to control the physical performance of another's work before declaring that the entity is not an employer under the FLSA." *Zheng*, 355 F.3d at 69. An individual need not possess "formal control" over a worker to qualify as an employer; the entity may simply exercise "functional control" over the

worker in question. *Id.* at 72. Employer "status does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees.  Control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitations on control do not diminish the significance of its existence."  *Herman v. RSR Sec. Serv. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (citation, internal quotation marks omitted).  Indeed, "in certain circumstances, an entity can be a joint employer under the FLSA even when it does not hire and fire its joint employees, directly dictate their hours, or pay them."  *Zheng*, 355 F.3d at 70.

In *Carter v. Dutchess Community College*, 735 F.2d 8 (2d Cir. 1984), the Second Circuit identified four factors for determining the `economic reality' of a putative employment relationship: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Barfield v. NYC Health & Hosps. Corp.*, 537 F.3d, 132, 142 (2d Cir. 2008) (quoting *Carter*, 735 F.2d at 12). These factors do not constitute "a rigid rule for the identification of a FLSA employer," but rather "provide a nonexclusive and overlapping set of factors to ensure that the economic realities test mandated by the Supreme Court is sufficiently

9

comprehensive and flexible to give proper effect to the broad language of the FLSA." *Id.* at 143.

In addition to these four factors, courts must also consider "other factors bearing upon the overarching concern of whether the alleged employer possessed the power to control the workers in question." *Irizarry* 722 F.3d at 105 (citing *Herman v. RSR Sec. Servs.*, 172 F.3d 132, 139 (2d Cir. 1999)). Most importantly, courts must consider whether the individual possessed "operational control." *Id.* at 109. "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Id.* at 110.

As this Court explained in *Irizarry*, "operational control" does not require that the individual putative employer be responsible for managing the plaintiff employees, or even that she had come directly in contact "with the plaintiffs, their workplaces, or their schedules." *Id.* Nor must the individual defendant be "personally complicit in FLSA violations." *Id.* Moreover, evidence beyond the individual's authority over employees, including evidence of the individual's authority over the business's affairs in general, is relevant to the totality of the circumstances to determine the individual's operational control of the employment. *Id.*

10

While the question of whether the same test for employer status applies under the NYLL was left open by the 2nd Circuit in *Irizarry*, *id.* at 117-118, "district courts in this Circuit have consistently interpreted the definition of `employer' under the New York Labor Law coextensively with the definition used by the FLSA." *Ho v. Sim Enters.*, 2014 U.S. Dist. LEXIS 66408, *26 (S.D.N.Y. May 14, 2014); *see also Hart v. Rick's Cabaret Int'l, Inc.*, 967 F.Supp.2d 901, 940 (S.D.N.Y. 2013).

### C. The District Court's Mechanical Application of the *Carter* Factors Constitutes Reversible Error

The district court received abundant evidence that Defendant Satinder Sharma possessed operational control over the Corporate Defendant and Plaintiffs' workplace. Plaintiff Tapia testified that Satinder Sharma was an owner of the restaurant, was at the restaurant daily, and was integrally involved in its everyday affairs. (A-91). Plaintiff Tapia further testified that he supervised the staff, gave instructions to the manager, and reviewed payroll records. (A-91-92). Plaintiff Castillo also testified that Satinder Sharma was present at the restaurant daily, integrally involved in its affairs, and both supervised the restaurant and gave instructions to staff. (A-96-97). Plaintiff Romulo Ricano Balderas also made these observations. (A-100-101).

The Court credited these observations. In its Memorandum and Order dated September 1, 2016, the district court concluded that Satinder Sharma was fifty-

percent owner, involved in the general management of the restaurant, came to the restaurant daily, gave instructions to the restaurant's managers, supervised the staff in cleaning and organizing the restaurant, and reviewed the restaurant's payroll records each week. (A-108).

Nevertheless, the district court mechanically applied this Court's decision in *Carter*, deciding Satinder Sharma could not be an employer because he did not receive direct evidence that he hired or fired employees, supervised work schedules, or himself paid them directly. (A-117-119).

But as this Court has instructed, "in certain circumstances, an entity can be a joint employer under the FLSA even when it does not hire and fire its joint employees, directly dictate their hours, or pay them." *Zheng*, 355 F.3d at 70. As this Court explained in *Zheng*, the Carter factors—"hiring and firing, supervising schedules, determining rate and method of payment, and maintaining records"— "focus solely on the formal right to control the physical performance of another's work." 355 F.3d at 69. Because the right to control another's work "is central to the common-law employment relationship," the factors "approximate the common-law test for identifying joint employers." Id. (quoting Restatement of Agency § 220(1) (1933) ("A servant is … subject to the other's control or right to control.")). But an exclusive reliance on the four-factor test cannot be reconciled with the FLSA's broad language, "which necessarily reaches beyond traditional agency law." Id. (emphasis

12

added). Thus, while establishing an agency relationship under the Carter factors "may be sufficient to establish joint employment under the FLSA, it is not necessary to establish joint employment." *Id*. at 79. Indeed, this Court found a district court's "mechanical" reliance on the four Carter factors to conclude that an individual is not an FLSA "employer" is reversible error in this Circuit. *Id.* at 79 n.8. This Court should find that to be the case here, where the Court did not do any meaningful analysis of how Defendant Sharma's ownership of the restaurant and managerial functions affected the analysis of whether he was Plaintiffs' employer.

Plaintiffs presented direct evidence that Satinder Sharma maintained employment records, specifically review of pay records. Notably this fact suggests that Satinder Sharma knew of, suffered and did not correct the wage violations at issue in this case, although as fifty-percent owner of the company he could be inferred to have had this power. Moreover, this Court held in *Irizarry* and in *Herman* that although this factor was not satisfied, the individual defendants at issue were employers. *Irizarry*, 722 F.3d at 116-117; *RSR Sec. Servs.*, 172 F.3d at 140-141.

It is true that the Court did not receive direct evidence that Defendant Sharma directly hired or fired any employee or managed schedules. However, the totality of circumstances demonstrating Satinder Sharma was Plaintiffs' employer is arguably stronger than in *Irizarry*. In *Irizarry*, only two of the four *Carter* factors were satisfied. *Irizarry*, 722 F.3d at 114-116. Moreover, as was the case in *Irizarry*,

Satinder Sharma is the owner of the Bricky Lane Curry House business.  Unlike *Irizarry*, where there were extensive layers of management, between 30 and 35 stores, and 1700 employees, *see Irizarry*, 722 F.3d at 102, 111-112, here management was limited to Sharma and managers, there was only one business at issue, and far fewer than 1700 employees.  A fact-finder could reasonably conclude that in a small operation such as Brick Lane Curry House, Satinder Sharma exercised considerable operational control over its employees.  *See Manning v. Boston Med. Ctr. Corp.,* 725 F.3d 34, 48 (1st Cir. 2013) (individual's role as "president and chief executive officer suggests that she was in position to exert substantial authority in the individual liability analysis).

 Financial control of a company can be an important consideration in finding an individual to be an employer.  *Irizarry,* 722 F.3d at 115.  In *Irizarry*, the individual at issue testified that "he could shut down the business, declare bankruptcy, as well as provide the personal signature necessary for a bank letter of credit to be issued in favor of [the business] . . . which further demonstrates the kind of financial control emphasizes" in finding an individual to be an employer.  *Id.*  Moreover, as part of considering whether an individual determined employees pay, this Court has considered whether the individual "controlled the company financially."  *Irizarry*, 722 F.3d at 115 (quoting *RSR Sec. Servs.*, 172 F.3d at 140 ).  Here, it was conclusively established that Satinder Sharma was fifty percent owner of the

Defendant Corporation.   As such, he undoubtedly held the power to control the Brick Lane Curry House corporation financially — to "shut down the business, declare bankruptcy," and to "sign paychecks." *Irizarry*, 722 F.3d at 115.  As this Court held in *Irizarry*, that financial control of the business demonstrates the third *Carter* factor is satisfied. *Id.* at 115.

Ownership alone is not sufficient alone to establish that an individual in an employer. *Irizarry*, 722 F.3d at 111.  But assuming that ownership of a corporation is insufficient standing alone, ownership combined with management authority and control of the company's operations is plainly sufficient. *See RSR*, 172 F.3d at 141 (noting that the defendant was "not only a 50 percent stockowner," but was also "generally involved" in the company's operations). As owner of Brick Lane Curry House, and in attendance daily, Sharma was an individual who directly stood to profit if the restaurant was profitable.  Put another way, Sharma personally gained by Brick Lane Curry House illegally lowering its labor costs by paying employees below applicable minimum and overtime wages.

The district court also gave minimal import to its findings that Sharma had a role in management decisions and daily interaction with his business. This Court in *RSR*, however, held that a 50% owner and chairman of the board had "operational control" based on far less day-to-day involvement. In *RSR*, this Court found the individual defendant to be an "employer" under the FLSA where he was only a 50%

15

shareholder, worked in a satellite office, and only occasionally made decisions regarding the corporation's business. It follows that Sharma is an employee because the evidence here is much stronger.

## II.   THE DISTRICT COURT ERRED IN DECLINING TO AWARD LIQUIDATED DAMAGES UNDER BOTH THE FLSA AND NYLL

The Court's failure to award liquidated damages under both the FLSA and NYLL should be reversed.  This Court should not follow the non-precedential summary order issued in *Chowdhury v. Hamza Express Food Corp.*, 666 Fed. Appx. 59 (2nd Cir. Dec. 7, 2016), and should hold that a plaintiff may recover liquidated damages under both the FLSA and NYLL for the same violations.

As an initial matter, the *Chowdhury* summary order does not have precedential effect.  Local Rule 32.1.1(a) ("Rulings by summary order do not have precedential effect"); *see also Hoefer v. Bd. of Educ. of the Enlarged City Sch. Dist. of Middletown*, 820 F.3d 58, 65 (2d Cir. 2016) (unpublished summary order is not precedential).

Both the FLSA and NYLL provide for awards of liquidated damages upon an award of liquidated damages.  29 U.S.C. §216(b); NYLL § 198(1-a); *id.* §663(1). The FLSA provides for an award of liquidated damages at one hundred percent of the unpaid wages, which may be reduced or withheld only if the defendant demonstrates that the FLSA violation was in good faith and that it had reasonable

16

grounds for believing it was not violating the FLSA.  29 U.S.C. §216(b); *see also*
*Chowdhury*, 666 Fed. Appx. at 60.  The NYLL, prior to 2009, provided for an award
of liquidated damages on twenty-five percent of the unpaid wages, if the employee
established that the employer's violation was "willful."  *Chowdhury*, 666 Fed. Appx.
at 60.  The NYLL was amended in 2009 to make liquidated damages mandatory
unless the employer demonstrates good faith, and was again amended in 2010
(effective April 9, 2011) to increase the amount of available liquidated damages to
one hundred percent of the total wages due.  *Id.*  The 2010 amendments also added
a requirement that a court award an employee who prevails on a wage claim
prejudgment interest.  NYLL §198(1-a); *see also* N.Y. Bill Jacket 2010, ch. 594, at
130.

Before *Chowdhury*, district courts in this Circuit were divided as to whether a
plaintiff may recover liquidated damages under both the FLSA and NYLL.
However, "allowing recovery under both statutes appear[ed] to be the majority
approach."  *Begum v. Ariba Disc., Inc.*, No. 12-cv-6620 (DLC), 2015 U.S. Dist.
LEXIS 5598, *5, 2015 WL 223780 (S.D.N.Y. Jan. 16, 2015) (quoting *Tackie v. Keff
Enters. LLC*, No. 14cv2074 (JPO), 2014 U.S. Dist. LEXIS 130148, 2014 WL
4626229, at *5 (S.D.N.Y. Sept. 16, 2014)); *see also Mashud Parves Rana v. Monirul
Islam*, 210 F. Supp. 3d 508, 515 (S.D.N.Y. 2016) (adopting "majority view" and
awarding liquidated damages under both FLSA and NYLL); *Rodriguez v. Globe*

*Inst. of Tech.*, 15-cv-1435 (RA) (SN), 2016 U.S. Dist. LEXIS 106573, *10-*11 (S.D.N.Y. August 10, 2016) (same), report and recommendation adopted, 2016 U.S. Dist. LEXIS 137656 (S.D.N.Y., Oct. 4, 2016).  "This is because the Supreme Court has specified that liquidated damages under [the] FLSA are compensatory, but the Second Circuit has held that liquidated damages under the NYLL are punitive." *Begum*, 2015 U.S. Dist. LEXIS 5598, at *5 (quoting *Tackie*, 2014 WL 4626229, at *5) (citations omitted).  "Therefore, the two types of liquidated damages are not functional equivalents, and a plaintiff may recover both."  *Id.* (quoting *Tackie*, 2014 WL 4626229, at *5).

However, before the *Chowdhury* decision, an increasing number of decisions in this Circuit held that cumulative liquidated damages under the FLSA and NYLL should not be awarded, typically reasoning that "'recent amendments to the NYLL strengthen the position that double liquidated damages are not available because the two liquidated damages provisions serve the same purpose.'  *Santana v. Latino Express Rests., Inc.*, 198 F.Supp.3d 285, 293 (S.D.N.Y. 2016).  In particular, these courts frequently held that 2009 amendments to the NYLL which changed the standard for awarding liquidated damages from proof of an employer's willfulness to a good faith standard to be established by an employer to avoid liquidated damages, and 2010 amendments which increases the NYLL liquidated damages amount from 25% to 100%, suggest that awarding liquidated damages under both

the FLSA and NYLL is no longer justified.  *See, e.g., Rodriguez v. Obam Mgmt.*, 13-cv-00463 (PGG) (DF), 2016 U.S. Dist. LEXIS 155315, *54-*57 (S.D.N.Y. Nov. 7, 2016) (collecting cases); *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, 14-CV-10234 (JGK) (JLC), 2016 U.S. Dist. LEXIS 121259, *50-*51, 2016 WL 4704917 (S.D.N.Y. Sept. 8, 2016) (collecting cases), *report and recommendation adopted*, 2016 U.S. Dist. LEXIS 161123, 2016 WL 6879258 (Nov. 21, 2016).

The panel in *Chowdhury* adopted this reasoning in its summary order.  The *Chowdhury* summary order concluded that the NYLL now mirrors the FLSA, in requiring the defendant to establish good faith, rather than requiring the plaintiff to establish willfulness.  *Chowdhury*, 666 Fed. Appx. at 60-61.  The court ruled that absent explicit provision for a cumulative liquidated damages award under the NYLL, such liquidated damages are not allowed.  *Id.* at 61.  The Court further explained that it understood the legislative history of the NYLL amendments to evince an intent to bring the NYLL's liquidated damages provisions into conformity with the FLSA's liquidated damages, therefore eliminating any reasons for awarding liquidated damages under both statutes.  *Id.*

Plaintiffs respectfully submit that the *Chowdhury* summary order was wrongly decided.  The view that the amendments to the NYLL represented a change in the purpose of the liquidated damages imposed by the statute, from punitive to

compensatory, is not supported by the text of the NYLL, the structure of the NYLL,

or the legislative history of the amendments.

Magistrate Judge Francis compellingly addressed this matter in detail:

> While amended NYLL now mirrors the FLSA in its treatment of liquidated damages, the foundation for the notion that the two statutes serve different purposes -- that is, that liquidated damages under NYLL are punitive, unlike their FLSA counterparts -- has not been shaken. Indeed, the Sponsors Memorandum in support of the 2010 amendments (which increased liquidated damages from 25% to 100%) justifies the modifications by observing that "[t]he penalties in place for employers paying less than minimum wage are minimal and offer little deterrent -- this will change dramatically with this legislation. Penalties for violating employee rights would be increased in order to far better protect workers' rights and interests." N.Y. Spons. Memo., 2010 S.B. 8380, Leg. 233, Reg. Sess. (Oct. 28, 2010) (emphasis added). And, although amendments effective in 2009 removed the requirement that a plaintiff prove that violations were "willful" in order to merit liquidated damages, instead providing the employer an opportunity to "prove[] a good faith basis to believe that its underpayment of wages was in compliance with the law," NYLL §§ 198(1-a), 663(1), the Sponsors Memorandum in support of those amendments says nothing about altering the punitive purpose of the liquidated damages provision; rather, it asserts that the amendment aims to remedy "the inherent unfairness of requiring employees who have already proven they were underpaid to further prove the underpayment was willful. The burden of explaining the basis of violations rightly rests with the employer, rather than imposing the onerous burden on employees of establishing their employer's state of mind." N.Y. Spons. Memo., 2009 A.B. 6963, Leg. 232, Reg. Sess. (April 8, 2009). This indicates that the 2009 amendments merely

> shifted the burden of proving liquidated damages, not their
> purpose.

*Castillo v. RV Transp., Inc.*, 15-cv-0527 (LGS) (JCF), 2015 U.S. Dist. LEXIS 170996, *18-*20 (S.D.N.Y. Dec. 21, 2015), *report and recommendation adopted in part, rejected in part*, 2016 U.S. Dist. LEXIS 48503 (rejecting recommendation to award liquidated damages under both statutes).  This examination of the legislative history of the amendments to the NYLL confirms that the amendments were intended to increase the penalties for employers who deny legal wages to employees, and to shift the burden of proving liquidated damages to the employer, without changing the purpose of the liquidated damages.

The notion that NYLL liquidated damages are compensatory is debunked by the awarding of prejudgment interest in addition to liquidated damages under the NYLL.  The NYLL, since the 2010 amendments, expressly provides for awards of both prejudgment interest and liquidated damages.  N.Y.L.L. §198(1-a).  Courts have long held that prejudgment interest is compensatory under the NYLL, and that as a result prejudgment interest under the NYLL cannot be recovered together with liquidated damages under the FLSA, which are also compensatory.  *See Hernandez v. JRPAC, Inc.*, Index No. 14-cv-4176 (PAE), 2016 U.S. Dist. LEXIS 75430, *113 (S.D.N.Y. June 9, 2016) (prejudgment interest is compensatory for defendant's interest-free use of money owed to plaintiff, and because FLSA liquidated damages are also compensatory, prejudgment interest cannot be awarded together with FLSA

liquidated damages); *see also Asfaw v. BBQ Chicken Don Alex No. 1 Corp.*, Index No. 14-cv-5665 (CBA), 2016 U.S. Dist. LEXIS 42298, *10 n.2 (E.D.N.Y. Mar. 30, 2016) (quoting *Santillan v. Henao*, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011)).  At the same time, "[h]istorically, the case law permitting the award of prejudgment interest alongside an award of liquidated damages for NYLL violations relied on the distinction between the punitive purpose of NYLL liquidated damages and the compensatory purpose of prejudgment interest." *Hernandez*, 2016 U.S. Dist. LEXIS 75430 at *113.

Because the NYLL now provides for awards of both compensatory prejudgment interest, and liquidated damages, the fair conclusion is that liquidated damages under the NYLL are still punitive, not compensatory.  The Court in *Chowdhury* entirely failed to address the incompatibility of the NYLL's express award of prejudgment interest with the view that the NYLL's liquidated damages are compensatory.

Moreover, inferring a change in the purpose of NYLL liquidated damages from the shift in the burden and the increase in the award results in amendments which were intended to impose a greater deterrent and penalty on employers in fact providing less of a deterrent and penalty.  The 2009 amendment of the burden to obtain liquidated damages, shifting the burden from the employee proving willfulness to the employer proving good faith, was part of a group of amendments

with the purpose of "expand[ing] worker protections and remedies against employers who violate Labor Law requirements related to wage payment."  New York State Assembly Memorandum in Support of Legislation, *reprinted in* N.Y. Bill Jacket 2009, ch. 372, at 5.  The amendments were strongly supported by groups that advocate and represent low-wage workers, because the amendments would strengthen protections for such workers.   Letters in Support by National Employment Law Project and The Legal Aid Society, *reprinted in* N.Y. Bill Jacket 2009, ch. 372, at 20-22.

Similarly, the 2010 amendment, increasing the liquidated damages under the NYLL to 100%, was part of a group of amendments to the NYLL known as the Wage Theft Prevention Act ("WTPA").  The WTPA "seeks to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately."   New York State Senate Introducer's Memorandum in Support, *reprinted in* N.Y. Bill Jacket 2010, ch. 594, at 5.  The Department of Labor strongly supported the bill because "[c]urrent *penalties* for wage theft are so low that there is a financial incentive to underpay workers," and the "additional *penalties* . . . set forth in this legislation will create new deterrents to violations of wage laws and protect workers who see redress for such violations." Letter from Colleen C. Gardner, Commissioner of Labor, *reprinted in* N.Y. Bill Jacket 2010, ch. 594, at 9-10 (emphases added).  The WTPA received strong support

23

from advocates for low-wage workers such as the Legal Aid Society, New York Jobs with Justice/Urban Agenda, Make the Road New York, National Employment Law Project, Coalition for the Homeless, and MFY Legal Services.  Letters *reprinted in* N.Y. Bill Jacket 2010, ch. 594, at 17-20, 33-34, 56-57, 75-76, 82-83, 105, 117-118.

Both amendments had the purpose of expanding remedies for employees, and deterring and penalizing employers for labor law violations.  It would be contrary to the purposes of the amendments to read the burden-shifting and increased liquidated damages as an indication that NYLL liquidated damages were intended to serve the same compensatory purpose as the FLSA liquidated damages, such that a plaintiff could only recover under one provision.  This would significantly reduce, rather than increase, the remedies for the many employees who bring claims under both the FLSA and NYLL.  Absent any clear indication from the text of the amendments to the NYLL or the legislative history of those amendments, it is improper to read a change in the purpose of liquidated damages under the NYLL from punitive to compensatory.

Moreover, legislators are presumably aware of existing judicial interpretations.  *See Schmidt v. Falls Dodge, Inc.*, 19 N.Y. 3d 178, 184 (2012) (Ciparick, J., dissenting) (observing that "the legislative history of a particular enactment must be reviewed in light of the existing decisional law which the Legislature is presumed to be familiar with" and that settled interpretations become

24

"as much a part of the enactment as if incorporated into the language of the act itself" (quoting *Matter of Knight-Ridder Broad., Inc. v. Greenberg*, 511 N.E.2d 1116, 1119 (N.Y. 1987)).  The Court should presume that the New York legislature was aware before amending the NYLL liquidated damages provisions that the prevailing interpretation was that employees could recover FLSA and NYLL liquidated damages simultaneously.  There is no indication that the NYLL amendments were intended to change this.  The Court should presume that the New York legislature did not intend to change prevailing law and take away a plaintiff's ability to recover liquidated damages under the NYLL and FLSA simultaneously when it amended the NYLL liquidated damages to shift the burden of obtaining liquidated damages and increase New York's liquidated damages.  This Court should therefore find that the Court may award of liquidated damages under both the FLSA and NYLL.

Alternatively, the Court should certify the issue of whether liquidated damages under the NYLL are compensatory or punitive to the New York Court of Appeals.  *See AHW Inv. P'ship v. Citigroup Inc.*, 806 F.3d 695, 703-705 (2d Cir. 2015) (certifying question to Delaware Supreme Court where Second Circuit's non-precedential summary orders suggested answer to state law issue).

## **Conclusion**

Based on the foregoing, Plaintiffs respectfully request that the Court reverse the district court's decision that Satinder Sharma was not Plaintiffs' FLSA and NYLL employer and remand this matter for further proceedings. The Court should also reverse the district court's findings concerning liquidated damages.

Dated:  New York, New York
        December 14, 2017

MICHAEL FAILLACE & ASSOCIATES, P.C.
*Attorneys for Plaintiffs-Appellants*

By:  ___/s/ Shawn R. Clark___
Shawn R. Clark
60 East 42nd Street, Suite 4510
New York, New York 10165
(212) 317-1200

26

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, the foregoing brief is in 14-Point Times Roman proportional font and contains 5911 words and thus is in compliance with the type-volume limitation set forth in Rule 32(a)(8)(B) of the Federal Rules of Appellate Procedure.

Dated December 14, 2017

By: <u>/s/ Shawn R. Clark</u>
Shawn R. Clark

STATE OF NEW YORK    )                  **AFFIDAVIT OF SERVICE**
                              )   ss.:      **BY OVERNIGHT EXPRESS**
COUNTY OF NEW YORK   )                 **MAIL**

       I,                   , being duly sworn, depose and say that deponent is not a party to the action, is over 18 years of age and resides at the address shown above or at

      **On December 14, 2017**

deponent served the Brief for Plaintiffs-Appellants within**:**

      **upon:**

**Blch 3rd Ave. LLC**
**99 Second Avenue**
**New York, NY 10003**
**Attorney for Defendant-Appellee**
**Blch 3rd Ave. LLC, DB A Brick Lane Curry House**

**Ajilt Bains**
**102 Aspen Drive**
**West Windsor, NJ 08550**
**Attorney for Defendant-Appellee**
**Ajilt Bains**

**Satinder Sharma**
**Apt. 5W**
**99-05 63rd Drive**
**Rego Park, NY 11374**
**Attorney for Defendant-Appellee**
**Satinder Sharma**

the address(es) designated by said attorney(s) for that purpose by depositing **2** true copy(ies) of same, enclosed in a postpaid properly addressed wrapper in a Post Office Official Overnight Express Mail Depository, under the exclusive custody and care of the United States Postal Service, within the State of New York.

This document was also submitted via the CM/ECF Case Filing System. All counsel of record in this case are registered CM/ECF users. Filing and service were performed by direction of counsel.

**Sworn to before me on December 14, 2017**

**MARIA MAISONET**
Notary Public State of New York
No. 01MA6204360
Qualified in Bronx County
Commission Expires Apr. 20, 2013

_____

Job # 277622