# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 East 42nd Street, Suite 4510                                    Telephone: (212) 317-1200
New York, New York 10165                                          Facsimile: (212) 317-1620

September 6th, 2018

<u>**Via ECF**</u>

Honorable Lorna G. Schofield.
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
40 Foley Square
New York, NY 10007

> **Re:** **Flores, Carrasco, et al. v. NYC Pasta and Risotto Co. LLC, et al.;**
> <u>17-cv-6915 (LGS)_____</u>

Dear Judge Schofield:

The undersigned writes to address Defendants' motion.

Plaintiffs have not been fully heard on the issue of individual liability because they have not closed their case in chief.  Although <u>Fed. R. Civ. P. 50(a)</u> does not explain what "fully heard" means, in practice, party has been fully heard when he rests his case. <u>Echeverria v. Chevron USA Inc. (5th Cir. La. Nov. 15, 2004), 391 F3d 607, 2005 AMC 1196, 59 Fed R Serv 3d (Callaghan) 1270</u>.  Thus, Plaintiffs respectfully ask that the motion be denied presently as pre-mature.

In the event the Court desires to entertain the motion at this juncture, Plaintiffs offer this brief submission in opposition and would ask for oral argument.

Plaintiffs' testimony and exhibits are replete with evidence proving that Santinder Sharma and Daniel Montoya are employers as understood by both the FLSA and NYLL.

The Second Circuit has informed us that FLSA employers needs not exercise day to day control but rather that "a person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment. Although this does not mean that the individual 'employer' must be responsible for managing plaintiff employees—or, indeed, that he or she must have directly come into contact with the plaintiffs, their workplaces, or their schedules—the relationship between the individual's operational function and the plaintiffs' employment must be closer in degree than simple but—for causation." *Irizarry v. Catsimatidis*, 722 F. 3d 99 (2nd Cir. 2013).

The Second Circuit ultimately found in Irizarry that:

"There is no question that Gristede's was the plaintiffs' employer, and no question that Catsimatidis had functional control over the enterprise as a whole. His involvement in the company's daily operations merits far more than the symbolic or ceremonial

characterization he urges us to apply. Unlike the defendant in *Wirtz,* who visited his company's facilities only a few times a year, Catsimatidis was active in running Gristede's, including contact with individual stores, employees, vendors, and customers. Catsimatidis dealt with customer complaints, in-store displays and merchandising, and the promotion of store personnel. That he may have done so "only occasionally" does not mean that these actions are irrelevant, *see RSR,* 172 F.3d at 139, especially when considered in the context of his overall control of the company.

Although there is no evidence that he was responsible for the FLSA violations— or that he ever directly managed or otherwise interacted with the plaintiffs in this case— Catsimatidis satisfied two of the *Carter* factors in ways that we particularly emphasized in *RSR:* the hiring of managerial employees, and overall financial control of the company. *See id.* at 136-37, 140 (finding that the individual defendant "exercised financial control over the company" and "frequently" gave instructions to subordinate managers); *see also Donovan v. Grim Hotel Co.,* 747 F.2d 966, 972 (5th Cir.1984) (noting that the individual defendant was the "`top man'" in a hotel company who "held [the hotels'] purse-strings and guided their policies" and that the hotels "speaking pragmatically, ... functioned for the profit of his family"). This involvement meant that Catsimatidis possessed, and exercised, "operational control" over the plaintiffs' employment in much more than a "but-for" sense. His decisions affected not only Gristede's bottom line but individual stores, and the personnel and products therein."

Plaintiff Mukhina offered dozens of checks signed by Defendant Sharma.  **See** Plaintiffs' Exhibit 1.  She offered testimony that she routinely issued Defendant Sharma income statements on a daily basis.  **See** Trial Tr. Pgs. 31-33.  She offered testimony that Defendant Sharma routinely came to the restaurant to talk with managers and staff to monitor operations.  Trial Tr. 33, LL 10-23.  She testified that Defendant Sharma was universally hailed as being the owner by the managers and staff.  Trial Tr. 34:7-10; 37:19-22.  She testified Defendant Sharma served as the contact point for late payments throughout her employ.  Trial Tr. 34:18-25; 35:1-17.  She testified that Defendant Sharma regularly signed off on her paychecks and managed the production and cashing of her paychecks.  Trial Tr. 35:11-19; 39-40; Plaintiffs Exhibit 1.  She testified Defendant Sharma authorized his other restaurant business – Bricklane Curry House – to issue payments to her even though she was only employed at Pasta Risotto.  Trial Tr. 36:4-10; 40:21-23; Plaintiff's Exhibit 2.

Like the defendant in Irizarry who did not interact with the employees on a daily or even occasional basis, Defendant Sharma's participation in the issuing of pay, monitoring of the financial condition of the company, authorization to use sister company bank accounts, and regular monitoring of managers offers more factual material of operational control than even that found within the Irizarry case itself where the CEO was held to be an employer of Gristiedes, an infinitely larger company than the one at issue in this case.

September 7th, 2018
Page 3


Plaintiffs contend that Defendant Sharma should be found to be an employer of both Plaintiffs in this matter by virtue of his operational control just as Catisimatidis was held to be the employer of an entire class of employees he did not directly interact with.

Likewise, Plaintiff Carrasco offered testimony that Defendant Montoya was an employer along with Defendant Sharma.  Plaintiff Carrasco testified that Defendant Montoya gave him his work schedule on a regular basis.  Trial Tr. 68:18-19; 72:1-2.  That Defendant Montoya gave him orders everyday at work and pulled him from deliveries for upwards of four hours a day to help with kitchen tasks.  Trial Tr. 69:2; 69:3-25; 70:1-20.  He testified that Defendant Montoya disciplined him at work. Trial Tr. 71:11-17.  That Defendant Montoya had the power to summon him to work and to dismiss him. Trial Tr. 71:21-25; 74:18-20.


Respectfully Submitted,

/s/ *Colin Mulholland, Esq.*
Colin Mulholland, Esq.