Exhibit 2

17-2718
*Tapia v. Blch 3rd Ave LLC*

# In the
# United States Court of Appeals
## For the Second Circuit

————

AUGUST TERM, 2017

SUBMITTED: JUNE 22, 2018
DECIDED: OCTOBER 1, 2018

No. 17-2718-cv

VALENTIN TAPIA, ROMULO RICANO BALDERAS, EUFEMIA CASTILLO, individually and on behalf of others similarly situated,

*Plaintiffs-Appellants*,

v.

BLCH 3RD AVE LLC, DBA Brick Lane Curry House, AJIT BAINS, SATINDER SHARMA,
*Defendants-Appellees.*[*]

————

Appeal from the United States District Court
for the Southern District of New York.
No. 14-cv-8529 – Alison J. Nathan, *District Judge*.

————

Before: WINTER, CALABRESI, and LIVINGSTON, *Circuit Judges*.

————

---

[*] The Clerk of Court is respectfully directed to amend the official caption as set forth above.

1

1    Appellants appeal from a judgment entered in the United States District

2    Court for the Southern District of New York (Alison J. Nathan, *J.*)   This is an

3    action to recover under federal and state minimum wage laws.   We affirm that

4    Appellants are not entitled to a double recovery of liquidated damages and that a

5    shareholder of the employer is not personally liable.

6    Judge Calabresi concurs in a separate opinion.

7                             SHAWN RAYMOND CLARK
8                             Michael Faillace & Associates
9                             New York, NY
10                            *for Plaintiffs-Appellants*
11                            _____
12

13   PER CURIAM:

14   Plaintiffs-Appellants Valentin Tapia, Romulo Ricano Balderas, and Eufemia

15   Castillo (collectively, "Appellants") are former employees of Brick Lane Curry

16   House, a Manhattan restaurant.   The restaurant is owned and operated by

17   Defendant-Appellee BLCH 3rd Ave. LLC ("BLCH"), which in turn is owned by

18   Defendants-Appellees Ajit Bains ("Bains") and Satinder Sharma ("Sharma").

19   On October 24, 2014, Appellants brought suit against BLCH, Bains, and Sharma,

20   alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*,

21   and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 190 *et seq*.   Appellants

claimed that defendants had failed to pay minimum, overtime, and spread-of-hours wages; failed to provide Appellants with required statements and notifications; and failed to reimburse them for costs of purchasing and maintaining equipment. After a bench trial, the United States District Court for the Southern District of New York (Nathan, *J.*) found for Appellants on all of their claims. *See Tapia v. Blch 3rd Ave. LLC*, No. 14-CV-8529, 2016 WL 4581341 (S.D.N.Y. Sept. 1, 2016). Despite finding in favor of Appellants, however, the district court also determined, *inter alia*, that (1) Appellants were not entitled to double recovery of liquidated damages; and (2) Sharma could not be held personally liable for BLCH's labor law violations. Appellants now appeal from both of those determinations. We assume the parties' familiarity with the underlying facts and the procedural history of the case, to which we refer only as necessary to explain our decision to affirm.

## I.   Liquidated Damages

Absent a showing of good faith, the FLSA provides for liquidated damages equal to unpaid wages and overtime recovered. 29 U.S.C. §§ 216(b), 260. The NYLL also provides for liquidated damages on the same terms, though its damages calculation is different. NYLL §§ 198(1-a), 663(1). The district court

awarded only the NYLL liquidated damages; Appellants contend that they are entitled to both the NYLL *and* FLSA damages.  Appellants' argument for double recovery, however, is squarely foreclosed by our recent decision in *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018), which vacated a judgment under the FLSA in favor of a larger judgment under the NYLL on the ground that the FLSA did not allow duplicative liquidated damages.  Although *Rana* contains dicta regarding the NYLL's treatment of duplicative recovery, we rely solely upon its holding with regard to the FLSA.  We therefore conclude that the district court properly declined to award cumulative liquidated damages.

**II.     Sharma's Personal Liability**

Appellants also argue that the district court erred in concluding that Sharma was not an "employer" within the meaning of the FLSA and NYLL, and thus could not be held personally liable for BLCH's labor law violations.  This argument is meritless.  "The Second Circuit has treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances; we have identified different sets of relevant factors based on the factual challenges posed by particular cases."[1]   *Irizarry v. Catsimatidis*, 722

---

[1] Appellants argue that Sharma was an "employer" by citing exclusively to cases that interpret

4

F.3d 99, 104 (2d Cir. 2013) (internal quotation marks omitted). The underlying inquiry in determining "employer" status is whether the individual possessed operational control over employees: "control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." *Id.* at 109. "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Id.* at 110. The following *Carter* factors are often relevant to this inquiry: "[W]hether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 142 (2d Cir. 2008) (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)). "No one of the four factors standing alone is dispositive." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999). The district court's "findings of historical fact and . . . findings as to the existence and

---

FLSA's definition of "employer." For purposes of this appeal, we assume, without deciding, that "the tests for 'employer' status are the same under the FLSA and the NYLL . . . ." *Irizarry*, 722 F.3d at 117 (observing that "this question has not been answered by the New York Court of Appeals").

degree of each factor—are findings of fact that must be accepted on appeal unless clearly erroneous."  *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 76 (2d Cir. 2003). We review *de novo* "the [district court's] ultimate decision as to whether a party is an employer . . . ."  *Id.*

The district court did not clearly err in concluding that "[o]nly the fourth *Carter* factor is even partially satisfied."  *Tapia*, 2016 WL 4581341, at *8.  As to the first factor, Appellants admit that there is no direct evidence that Sharma had the power to hire or fire employees.  Moreover, Appellants did not testify that Sharma hired or disciplined them, and Sharma testified that the general manager, Vivek Deora, was the one responsible for hiring the floor manager.  *See, e.g., RSR*, 172 F.3d at 140 (finding first factor satisfied based on evidence that the defendant actually hired three employees); *Irizarry*, 722 F.3d at 114 (finding first factor satisfied based on evidence that the defendant actually hired at least one manager, interviewed a potential manager, promoted at least two employees, and was notified of firings).

Nor was it clear error to find that the second *Carter* factor was not satisfied. Although Appellants testified that Sharma regularly visited the restaurant, tasted the food, and directed employees to clean, they did not testify that Sharma

6

controlled work schedules or other personnel decisions, or that Sharma was personally aware of Appellants' hours or other conditions of employment. *See Irizarry*, 722 F.3d at 113–15 (finding second factor was not satisfied even though the defendant visited stores regularly and "address[ed] problems that occurred in individual stores"). Instead, Sharma testified that the general manager, Deora, was the one who managed overall operations and "actually r[a]n the show completely," J.A. 65, and Appellants also confirmed that the floor manager, not Sharma, was the one that set their work schedules. *See RSR*, 172 F.3d at 140 (finding second factor satisfied based on evidence that the defendant assigned employees to work locations and oversaw the revision of employment application forms).

It also was not clearly erroneous to find that the third *Carter* factor was not satisfied. There was no evidence that Sharma determined employees' rates and methods of payment or signed employees' paychecks, as the Appellants attested that the floor manager, not Sharma, paid them in cash every week. *See Irizarry*, 722 F.3d at 115 (noting that "the key question is whether the defendant had the authority to sign paychecks throughout the relevant period" (quoting *RSR*, 172 F.3d at 140) (brackets omitted)). Appellants argue that financial control is

7

relevant to application of the third *Carter* factor, but aside from Sharma's status as a significant shareholder, they point to no evidence (nor can we discern any such evidence) in the record to support the assertion that Sharma exercised or possessed financial control over BLCH.   *See, e.g., RSR*, 172 F.3d at 136 (defendant exercised financial control by signing loans, approving purchases, and leasing vehicles on behalf of corporation); *Irizarry*, 722 F.3d at 115 (defendant exercised financial control by keeping track of payroll, arranging a meeting with an outside payroll company, and staying informed about whether employees were paid on time); *see also RSR*, 172 F.3d at 141 (observing that in *Wirtz v. Pure Ice Co.*, 322 F.2d 259, 262–63 (8th Cir. 1963), "stock ownership, in and of itself, was held insufficient to give rise to employer status"); *Gray v. Powers*, 673 F.3d 352, 355–56 (5th Cir. 2012) (rejecting proposition that "merely being an officer or shareholder subjects an individual to FLSA liability").

While the fourth *Carter* factor might be construed as partially weighing in Appellants' favor because Sharma reviewed payroll records, there was no evidence that he actively maintained the records.   In any event, this factor alone is not dispositive.   *RSR*, 172 F.3d at 139.

1  Reviewing *de novo* the district court's application of these factors in the
2  particular circumstances of this case, we discern no error in its determination that
3  Sharma is not an employer.

4                              *     *     *

5  We have considered Appellants' remaining arguments and find them to be
6  without merit.   Accordingly, we **AFFIRM** the judgment of the district court.

9

GUIDO CALABRESI, *Circuit Judge*, concurring:

I am happy to concur. As to the question of whether Satinder Sharma is an employer, I have nothing to add. As to the question of whether there can be recovery under both the Fair Labor Standards Act (FLSA) and the New York Labor Law (NYLL), I agree that we are bound by *Rana v. Islam*, 887 F.3d 118 (2d Cir. 2018) (per curiam). I also agree that *Rana*, since it upheld damages under the NYLL and vacated damages under the FLSA, must be read as a decision interpreting the federal law. A state law cannot, in the ordinary course, cause the vacatur of federal awards unless the federal law ordains that result.

I write separately, though, to make clear what *Rana* did not hold. More importantly, I also want to suggest how best to handle some problems that may arise in the future in view of the plethora of language in *Rana* about state law.

First, neither *Rana* nor the Court today holds that the FLSA bars a state from awarding double or treble damages for labor law violations of the sort at issue here. Our holding is limited to reading the FLSA to vacate the federal damage award, given the existence of state labor law damages. Second, neither *Rana* nor the Court today holds that the FLSA would bar a state labor law from awarding extra damages if, and only if, federal damages were vacated as a result of the

existence of state law damages. Both of these might be interesting questions of federal law. But resolving them was not necessary to decide *Rana*. Nor is it needed to decide the case before us today. Moreover, neither question was briefed or argued. Accordingly, our per curiam expresses no view on them.

I would say no more were it not for the fact that the bulk of the language in *Rana* seems to speak to and be an interpretation of what New York state labor law holds in circumstances, like the ones here, in which both the NYLL and the FLSA give damages for the same underlying acts. Our per curiam opinion today says all such language about state law is dicta. And that may be fair enough, since (for the reasons mentioned earlier) *Rana* must be read to be an interpretation of the FLSA ordering vacatur of a federal award.

But one could also read *Rana* to hold that the FLSA damages should—as a matter of federal law—be vacated because, and only because, New York state law does not allow double recovery. This is as plausible a reading as that which the per curiam seems to embrace, and it would make *Rana*'s language about state law a holding rather than, as we call it, dicta. Moreover, since the same result would obtain in the case before us under this reading of *Rana*, it would also make our calling the state law language in *Rana* "dicta" itself dicta.

In light of the extended discussion of state law in *Rana* and the language about state law that *Rana* describes as its "conclusion," it is certainly possible that other federal courts will read *Rana* as making a holding as to what is required by New York state labor law. That would create all sorts of problems, and so merits some discussion.

*Rana* describes its holding as follows: "We conclude that, because New York Labor Law does not call for awards of NYLL liquidated damages on top of liquidated damages under the FLSA, district courts may not award cumulative liquidated damages for the same course of conduct under both statutes." *Rana*, 887 F.3d at 119. The Court reasoned that, "[g]iven the background assumption disfavoring double recovery, . . . if the New York State Legislature [had] intended to provide multiple recoveries, it would have done so expressly." *Id.* at 123; *accord Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x 59, 61 (2d Cir. 2016) (summary order) ("interpret[ing] the [NYLL]" to bar double recovery of liquidated damages).

In the case before us, all that language makes no difference, and would make no difference to our result even if *Rana* were read as being—what it seems to describe itself as being—a decision in part about state law. This is so since, even as a decision on state law, *Rana* is "generally to be treated as controlling" until "a

subsequent state court or Second Circuit decision cast[s the opinion] into doubt." *Principal Nat'l Life Ins. Co. v. Coassin*, 884 F.3d 130, 134 (2d Cir. 2018). And no such intervening decisions have been pointed out to us.

I wish to address this topic in more depth. While decisions of the state's highest court will overturn our holdings on state law, even lower state courts can call these holdings into question. It is, after all, the state's law. On the basis of such a lower state court holding, a future panel of our Court, if it read *Rana* to have made a holding as to state law, could choose through certification to invite the state's highest court to decide whether *Rana* was correct in its reading of state law.

Certain issues of state law, however, will almost never come before state courts. That is the situation in this case. Here, the question is whether the NYLL permits a second recovery alongside a FLSA recovery for the same course of conduct. This issue will almost always arise in federal court: either the plaintiff will bring the suit federally or the defendant will remove it, and removal is exceedingly likely now given *Rana*'s language about state law and our reading of

*Rana*'s federal law holding. This means that a state court decision on what the NYLL allows will be hard to come by.[1]

While we still occasionally refer to certification as an "exceptional procedure," *Ajdler v. Province of Mendoza*, 890 F.3d 95, 104 (2d Cir. 2018) (quoting *McGrath v. Toys "R" Us, Inc.*, 356 F.3d 246, 250 (2d Cir. 2004)), it has in fact become a quite normal practice.[2] And in a context such as this one, where an issue of state law is unlikely to be heard in state court, federal courts should be especially sensitive to any possible doubts about the meaning of state law. The prospect of a state being unable to correct wrong interpretations of its own law carries obvious negative implications for federalism.

For that reason, I believe that almost any New York indication that *Rana*'s seeming-interpretation of New York law was wrong—whether in dicta, or by

---

[1] Moreover, even if a later court were not to read *Rana* as requiring a vacatur of the FLSA award only if state law barred double recovery, situations where the state court's interpretation of state law would matter could well occur. Imagine a case in which the FLSA gave higher damages than the NYLL. Our holding today and our reading of *Rana* do not say anything about what would happen. The federal award would not necessarily be vacated or reduced, and the question of what state law required as to the state award might become the relevant issue.

[2] *See* Advisory Group to the New York State and Federal Judicial Council, *Practice Handbook on Certification of State Law Questions by the United State Court of Appeals for the Second Circuit to the New York State Court of Appeals*, App. A (3d ed. 2016) (accessed at http://www.ca2.uscourts.gov/docs/Third%20Edition%20of%20Certification%20Handbook.pdf) (listing certifications to the New York Court of Appeals by year); Judith S. Kaye & Kenneth I. Weissman, *Interactive Judicial Federalism: Certified Questions in New York*, 69 FORDHAM L. REV. 373, 397 (2000) (noting most certifications to the New York Court of Appeals "have come in recent years"). In fact, both *Ajdler* and *McGrath* certified questions to the New York Court of Appeals.

5

administrative agencies, or perhaps even by legislators speaking about possible amendments to the law in question—may be enough to engender sufficient doubt to justify certification to the state's highest court. Indeed, even a consistent, different interpretation of similar laws by other states or circuits may create enough uncertainty to warrant certification. The point is simply this: if there is any new reason to doubt an earlier federal court's decision as to state law, the state's highest court should be given the opportunity to weigh in.

Of course, giving the state's highest court such an opportunity does not mean that the state court must take it. The certification can make clear that our Court would continue to follow our earlier language / state law holding unless the state's highest court accepts certification and tells us that that holding and reading of state law are wrong. Under such an approach, certification is neither time-consuming nor costly to the parties. Time and cost will be incurred only if the state's highest court believes it is worthwhile to correct us.[3]

---

[3] For the same set of reasons, and given the absence of any prior state decision on the question of double recovery, I believe that *Rana*'s panel might have been well-advised either to have abstained from its language as to state law, or, if it was inclined to make a holding with respect to it, to certify the question to the New York Court of Appeals. It could have done so with a clear statement that, should the New York Court of Appeals have declined certification, our Court believed that New York law did not permit double recovery. In this way we could have given New York the chance to interpret its law while still avoiding unnecessary time and expense.

Let me be clear. I think that avoiding double recovery—the result that *Rana* reached and that we follow today—is perfectly sensible. But just because a result seems sensible to me does not mean that a state desires it. There is much in the law, both federal and state, that I do not find especially sensible. The job of a judge, however, is to follow the law of the relevant jurisdiction, whether or not the judge agrees with it.

Where it would be costly and time-consuming to resolve a state law question by certification, simply following what seems sensible may well be the right thing to do. But where we can ascertain the relevant law without undue cost or time—and in the process, give the state a chance to speak where it otherwise could not—we should do it.